IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAMELA COSBY,

              Plaintiff,        CASE NO. 2:10-CV-180
                                         JUDGE EDMUND A. SARGUS, JR.
v.                                    MAGISTRATE JUDGE E. A. PRESTON DEAVERS

HOFFMAN-LA ROCHE, INC.,

              Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Motion for Summary Judgment (Doc. 34). For the reasons set forth herein, Defendant's motion is **GRANTED**.

### I. BACKGROUND

Plaintiff Pamela Cosby ("Cosby") brings this action against Defendant Hoffman-La Roche, Inc. ("Roche") with a claim for age discrimination brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C., §§ 621–634 ("ADEA"). Cosby, a former employee of Roche, alleges that she was improperly terminated from her position as a Rheumatology Specialist and replaced by a substantially younger person. (Compl. at ¶ 7–8.)

Cosby began her employment with Roche as a Renal Specialist in October 2006. (Compl. at ¶ 3.) She was initially hired to market and sell MIRCERA®, a new anemia drug. Roche, however, was not able to obtain FDA approval to sell MIRCERA®. (Compl. at ¶ 3–5.) As a result, in early 2008 Cosby was given the choice to either accept a six months severance package or elect to be reassigned within Roche. (Compl. at ¶ 5.) Cosby opted to continue

working with Roche and was selected to promote a new drug, ACTEMRA®, another drug awaiting FDA approval. (*See* Tang Decl. ¶ 4, June 1, 2011.) In her new position as a Rheumatology Specialist, Cosby was responsible for promoting the sale of BONIVA®, an approved medication which Roche was already promoting, while also preparing accounts for the launch of ACTEMRA®. (*Id.*)

As a Rheumatology Specialist, Cosby was not only expected to promote the product to medical facilities, physicians and other healthcare professionals, but also to become an expert on the product and use Roche's customer-centric marketing strategy. (*Id.* at ¶ 5–7.) Roche explained that its customer-centric marketing strategy involves two key components: "(1) 'engaging dialogue,' which involves asking questions designed to help understand the customers, their needs and priorities, and the issues that impact their practice; and (2) 'connecting solutions,' which is the process of highlighting relevant features and benefits of Roche's products to meet the customer's identified needs and priorities" and also required her to "understand evidence-based medicine and use the clinical marketing tools (such as the study reprints) to support her marketing messages." (Def.'s Mot. Summ. J. 3, citing Tang Decl. ¶ 7.)

In addition to providing extensive training and informational materials regarding BONIVA®, Roche also requires Division Managers to accompany clinical specialists on field visits to ensure that all company performance standards are being met, including adherence to marketing and promotional guidelines. (Def.'s Mot. Summ. J. 3–5.) Over the course of several months, Cosby's Division Manager, Allan Tang ("Tang"), repeatedly observed that Cosby exhibited a weakness in her ability to follow Roche's marketing strategy. (*See* Def.'s Mot. Summ. J. 5; Pl.'s Dep. Ex.11.) Tang provided specific follow-up instructions for Cosby to improve her performance, although, according to him, her performance failed to improve over

2

the course of his observations. (Def.'s Mot. Summ. J. 5–6; Pl.'s Dep. Ex. 4, 10, 11 & 14.) In March 2009, Tang placed Cosby on a Performance Improvement Plan ("PIP"), which identified specific job skills and competency areas in which Cosby needed to improve, but the primary concern was Cosby's lack of knowledge as to the product and disease state. (Def.'s Mot. Summ. J. 6–7; Pl.'s Dep. Ex. 13; Tang Decl. ¶ 10). A second Division Manager was also asked to review Cosby's work. During the course of the sixty-day PIP, Cosby's performance did not improve, as observed by Tang and also by another Division Manager, Adrian Smith. (Def. Mot. Summ. J. 7–9; Pl.'s Dep. Ex. 16–21.) Consequently, on July 17, 2009, Cosby, age fifty-two, was terminated from her employment with Roche. (Compl. at ¶ 8.) Following her termination, Roche hired Marka Renkel, age thirty-nine, to replace Cosby as a Rheumatology Specialist. (Pl.'s Mem. in Opp. to Def.'s Mot. Summ. J. 11.)

In accordance with the Age Discrimination in Employment Act ("ADEA"), Cosby filed a charge of age discrimination with the Ohio Civil Rights Commission and the Equal Opportunity Commission before bringing suit in federal court. 29 U.S.C. § 626(d) (requiring a claimant to file a charge of unlawful discrimination with the Equal Opportunity Commission before bringing suit in federal court); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 758 (1979); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir. 1995). After sixty days time had passed, Cosby initiated this action against Roche in the U.S. District Court for the Southern District of Ohio. Roche filed a motion to dismiss Cosby's complaint on the ground that it does not satisfy the federal pleading standards. This Court dismissed Roche's motion as moot. Roche now moves for summary judgment.

## II. SUMMARY JUDGMENT

The procedure for considering whether summary judgment is appropriate is set

3

forth in Federal Rule of Civil Procedure 56(c), which provides that summary judgment is appropriate if the movant shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. (a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 240 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule, set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the existence of a mere scintilla of evidence in support of the

nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

### III. APPLICABLE LAW

The Age Discrimination in Employment Act ("ADEA") provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). Specifically, the ADEA protects individuals age forty and older. 29 U.S.C. § 631(a).

A plaintiff may establish a prima facie case of age discrimination under the ADEA through either direct or circumstantial evidence that the defendant discharged the plaintiff because of her age. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), *overruled on other grounds*, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). To establish a prima facie case of age discrimination through circumstantial evidence, a plaintiff must establish: (1) she was at least forty years old when the alleged discrimination occurred; (2) she suffered an adverse employment action; (3) she was qualified for the position lost; and (4) she was replaced by a substantially younger person. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256–59 (1981); *Harris v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). If the plaintiff succeeds in demonstrating a prima facie case of age discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Id.* Once the defendant provides a legitimate,

5

nondiscriminatory reason for its action, the burden again shifts to the plaintiff to establish that the defendant's "proffered reason was a mere pretext for intentional age discrimination." *Id.* Ultimately, the plaintiff bears the burden of proving that age was the "but for" reason for the defendant's adverse employment action. *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135 (2008)).

A plaintiff may demonstrate pretext by showing that the defendant's proffered reason: (1) lacked any basis in fact; (2) did not actually motivate the defendant's decision; or (3) was an insufficient basis to motivate the adverse employment action. *Id.* "A defendant's proffered reason cannot be proved to be pretext 'unless it is shown both that the reason was false, and that discrimination . . . was the real reason.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

## IV. AGE DISCRIMINATION CLAIM

### A. Prima Facie Case

It is undisputed that Cosby meets three of the four elements of her prima facie case: (1) she is over 40 years old; (2) she was subject to an adverse employment action; and (3) she was replaced by a person substantially younger than her. (Pl.'s Mem. in Opp. to Def.'s Mot. Summ. J. 14–16; Def.'s Mot. Summ. J. 11.) The Defendant contends that Cosby was not qualified for the position of Rheumatology Specialist, insofar as she failed to meet her employer's requirements.

To show that she is qualified, Cosby must demonstrate that she was performing her job "at a level which met [her] employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (citing *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir. 1983)). Furthermore, if she was not meeting her employer's expectations, the

6

Defendant contends she was not doing her job. *Id.* Roche asserts that the Plaintiff's disagreement with the judgment of supervisors does not raise a material of issue of fact on the question of the quality of work. *Id.* (citing *Kephart v. Institute of Gas Tech.*, 630 F.2d 1217, 1223 (7th Cir. 1980), *cert. denied*, 450 U.S. 959 (1981)).

Roche has improperly conflated the three-step *McDonnell Douglas* analysis. It has offered as purported proof that Cosby was not qualified for the job (an issue in Plaintiff's burden as to a prima facie case) similar, if not identical, reasons for Cosby's discharge (the essence of the Defendant's burden in the second step of *McDonnell Douglas*). The Sixth Circuit has both long, and recently, held that the validity of the employer's rationale in terminating a plaintiff is not to be analyzed in the first step of the *McDonnell Douglas* analysis in initially determining whether the plaintiff is qualified for the job.

The Sixth Circuit made this point abundantly clear in an *en banc* decision, *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574–75 (6th Cir. 2003):

> a. *Prima facie case*
>
> The district court held that Wexler could not establish a prima facie case because he was not qualified for his job as manager of the Morse Road store. This conclusion was based upon the undisputed fact that the store's sales were declining, from which the court inferred that Wexler "did not meet his employer's legitimate expectations." This conclusion is flawed for two reasons.
>
> First, a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination

7

case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.").

Instead, the Sixth Circuit held:

> At the prima facie stage, a court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job.
>
> * * *
>
> The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field.

More recently, in *Provenzano v. LCI Holdings, Inc.*, No. 10-1639, — F.3d —, 2011 WL 6224548, at *7–8 (6th Cir. Dec. 15, 2011), the Court held:

> We would do well to pause here and admit that while the burden-shifting analysis of *McDonnell Douglas* was created to assist in the presentation of a discrimination case, it often fails to fulfill its purpose.
>
> * * *
>
> One common misapplication is the tendency to push all of the evidence into the prima facie stage and ignore the purpose for and application of the three stages. Such was the problem here.
>
> * * *
>
> We now turn to analysis of the evidence appropriate to the prima facie stage of this failure to promote case. We begin by examining Provenzano's qualifications in both the second (qualification) and fourth (comparison to promoted employee) prongs. *White*, 429 F.3d at 242-43. However, this evaluation must be conducted independently of LCI's proffered nondiscriminatory reason and must not conflate the prima facie and pretext stages of the *McDonnell Douglas* test. *Id.* at 242.

The record indicates that Cosby possessed the minimum qualifications required

8

for the position she held. In response, the Defendant has merely offered its rationale for discharging Cosby. *Wexler* and *Provenzano* prohibit consideration of the Defendant's justification at this stage. The Court has no difficulty holding that Cosby has established a prima facie case under *McDonnell Douglas*.

### B. Legitimate, Non-Discriminatory Reason

The burden of production now shifts to the Defendant to establish a legitimate business justification. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The offered reason meets this burden if it is "clear and specific" and is supported by "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not motivated by discriminatory animus." *Id.* at 257.

Roche contends that Cosby was fired for two reasons: (1) she lacked basic product knowledge, despite directives to learn more about BONIVAR®; and (2) she failed to implement Roche's marketing strategy, which included questioning of customers, mentioning of clinical trials, and identifying treatment solutions.

The undisputed facts indicate that the two reasons advanced in support of the discharge were identified as performance issues as early as October 14, 2008 in comments made by Cosby's supervisor in a Field Coaching Report (FCR). (Pl. Dep. 10.) Her supervisor noted that Cosby should do more questioning of customers, investigate their treatment rationale, and determine what motivated their pharmaceutical preferences. Similar comments were made in subsequent FCRs prepared between October 14, 2008 and the discharge in July of 2009. Nine additional FCRs were prepared and given to her, all describing in various degrees deficiencies in her knowledge of the product and her deviation from the sales strategy she was instructed to pursue. In addition, Roche assigned another supervisor to review Cosby's work.

9

Cosby testified at her deposition that her supervisor, Tang, wanted her to be more analytical during calls on customers, with emphasis on data and statistics. (Pl. Dep. 153, 155.) She, in turn, preferred a more "amicable and expressive" approach.

On April 27, 2009, Roche placed Cosby on a performance improvement plan which identified deficiencies in several areas, including knowledge of the product and method of selling the product. During the period of the performance improvement plan, Tang administered several tests to Cosby regarding technical aspects of BONIVAR®. According to Tang, Cosby was able to answer correctly only eleven of twenty questions. (Pl. Dep. 20.)

Roche ultimately discharged Cosby for unsatisfactory performance. The Court finds no genuine issue of material fact insofar as Roche has produced a legitimate business justification for its decision to terminate the Plaintiff.

### C. Pretext

The final step in the *McDonnell Douglas* analysis shifts the burden of production to the plaintiff, who must establish a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for discrimination. The plaintiff has the burden of establishing, within the summary judgment context, that the offered reason for discharge; (1) had no basis in fact; (2) did not motivate the discharge; or (3) was insufficient to motivate the discharge.

Plaintiff offers several arguments in support of her claim that the Defendant's proferred reasons were pretextual. First, she claims her performance was more than satisfactory, given her high level of sales. Second, she was the oldest worker in the division. Third, she was singled out by Tang for unfair treatment and was fired to make way for a thirty-nine-year-old former co-worker and friend of Tang's. Finally, she had completed and passed all training given

by Roche on the drug BONIVAR®, giving further reason to question Tang's testing of her knowledge of the drug. The Court addresses each of the issues *seriatim.*

The Court finds that simply because the Plaintiff had a high level of sales, this fact alone cannot prevent an employer from requiring other standards of performance. While high sales may indicate that one aspect of an employee's work is superior, high sales numbers do not necessarily connect to overall satisfactory performance, particularly with regard to the marketing of a highly sophisticated product, such as a pharmaceutical drug. An employer may insist upon non-discriminatory performance standards. The fact that an older employee has high sales, but is sanctioned for violating other neutral performance standards of an employer, does not establish pretext.

The Plaintiff gives only short shrift to the argument that she was the oldest person in the division and this constitutes evidence of pretext. According to Plaintiff, the division consisted of eight employees, a small number for purposes of statistical analysis with the objective of proving or disproving age animus. "For statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Tinker v. Sears, Roebuck & Co.,* 127 F.3d 519, 524 (6th Cir. 1997). "A sample which is too small can undermine the probative value of the statistical evidence." *Id.* (finding plaintiff's sample of thirteen employees to undermine probative value of evidence). Further, the record contains no information on the methodology utilized by Plaintiff, nor does it contain the data upon which she relied. Given these facts alone, on this basis, Plaintiff's statistical evidence failed to raise a material issue of fact regarding pretext.

The Plaintiff next contends that Tang singled her out and created tests he was not qualified to administer. Cosby argues that she received formal training as to BONIVAR® and passed the tests that accompanied the training. Cosby admitted, however, that she needed to improve her knowledge of the BONIVAR® studies. (Pl. Dep. 42.) It is clear that Tang could be direct and abrasive with Cosby. Cosby alleges that Tang told her she "had no selling skills whatsoever" and she "would never comprehend the clinical knowledge to sell" certain pharmaceuticals. (Cosby Aff. ¶ 9.) Rude treatment is usually poor management, but standing alone does not show pretext or age-based animus.

The fact that after Cosby's discharge Tang hired a friend and former co-worker who was thirty-nine years of age aided Cosby in establishing a prima facie case. It does not, however, establish pretext. Roche intended to maintain the position occupied by Cosby. The replacement had experience in pharmaceutical sales.

Cosby also testified at her deposition that Tang told her in March of 2009 that "whenever two pharmaceutical companies merge, there's a lot of downsizing . . . the first people to go are the older sales reps . . . that are making the high salaries." (Pl. Dep. 77–78.) This statement, according to Cosby, was made three months before her discharge, but six months after the Plaintiff's performance issues were described in field coaching reports. Tang did not say that older workers were about to be fired or that he thought older workers should be fired. The statement describes what he believed to be the ramifications of a merger.

Finally, the Court notes that the Performance Improvement Plan and the various field coaching reports consistently documented that the Plaintiff did not adhere to a specific sales strategy insisted upon by her employer. Cosby was repeatedly told to question the customers, investigate their treatment regimens, and use the results of the clinical studies involving

BONIVAR®. The Plaintiff has not shown that complaints of her work in those areas were false or pretextual. Her employer concluded that, after multiple written warnings over a nine-month period, Cosby would not conform to its expectations and requirements.

Cosby believed that Tang discriminated against her. (Pl. Dep. 71.) He may very well have been rude, demeaning, and insulting. But the ADEA protects employees from age discrimination only. The Plaintiff has not established pretext and therefore cannot prove that she was the subject of age discrimination.

### IV.

Based upon the foregoing, the Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

12-22-2011
**DATE**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**